**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

CRASH PROOF RETIREMENT, LLC

                    Plaintiff,

        v.

PAUL M. PRICE,

                    Defendant.

Case No. 2:20-cv-05906-JDW

## <u>MEMORANDUM</u>

If free speech means anything, it means that you do not get to sue peope because you don't like their opinion of you. In the immortal words of Taylor Swift, although "haters gonna hate, hate, hate . . . ," sometimes you just have to "shake it off." Taylor Swift, Shake It Off, MXM (2014). "Shake it off," however, Crash Proof Retirement did not. Instead, it sued Paul M. Price, claiming, among other things, that Mr. Price violated the Lanham Act by authoring an article that criticized Crash Proof's investment strategy. But the Lanham Act does not regulate critical speech. It regulates commercial speech, which Mr. Price's article is not. The Court will therefore grant Mr. Price's motion to dismiss.

## I.    BACKGROUND

Crash Proof offers retirement planning counseling. It "provides its clients with retirement peace of mind without regard to the stock market fluctuation. . . ." (ECF No. 1 at ¶ 1.) Mr. Price, a former stockbroker, retired from Merrill Lynch "in October 2000, but continues to write and give investment seminary." (*Id*. at ¶ 16 (quoting another

source).) On October 28, 2020, TheStreet published an article by Mr. Price titled, "*If It Sounds Too Good to be True, It Will Probably Cost You*."

Mr. Price spends about half of the article criticizing Crash Proof and questioning how it could offer a risk-free investment opportunity with a 5% to 8% interest rates with "no fees whatsoever." (*Id.* at ¶ 20.) Throughout this portion of the article, Mr. Price expresses doubt about Crash Proof's promises, noting that "if you believe Crash Proof's claims, there's a bridge in Brooklyn I'd like to sell to you." (*Id.*)  Mr. Price challenges Crash Proof's claims "that there are no fees attached to [its] services" because "[w]ho do you know who works for free?" (*Id.* and ECF No. 1-1).) He speculates "that Crash Proof was taking a huge cut of the principal for themselves right off the top." (*Id.*) In short, Mr. Price calls Crash Proof a scam that preys on desperate people who plunge "huge pieces of their life savings into products with no chance of success." (ECF No. 1-1 at 6.)

In the second half of the article, Mr. Price describes an alternative investment strategy for those who "seek reasonable total returns while accepting a very small degree of risk. . . ." (ECF No. 1-1.) The investment strategy that Mr. Price proposes does not refer to any specific product. It is, in Crash Proof's words, "an unoriginal, oft-written about, stock-based investment strategy of owning blue-chip stocks while selling in-the-money call options. . . ." (ECF No. 1 at ¶ 17.)

After learning of the article, Crash Proof had to "address the serious implications of having such false, disparaging and unfair statements made to the public. . . ." (Id. at ¶ 29.) So, it filed this case, asserting statutory claims against Mr. Price for violations of

the Lanham Act and the Pennsylvania Unfair Competition statute, as well as common law claims for commercial disparagement and tortious interference with business relations.

## II.   LEGAL STANDARD

A district court may dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  Rather than require detailed pleadings, the "Rules demand only a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Id.*  In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense."  *Id.*  First, the court must identify the elements needed to set forth a particular claim.  *Id.* at 787.  Second, the court should identify conclusory allegations, such as legal conclusions, that are not entitled to the presumption of truth. *Id.*  Third, with respect to well-pleaded factual allegations, the court should accept those allegations as true and "determine whether they plausibly give rise to an entitlement to relief."  *Id.*  The court must "construe those truths in the light most favorable to the plaintiff, and then draw all reasonable inferences from them."  *Id.* at 790. In deciding on a motion to dismiss, the court may consider the allegations contained in the complaint, exhibits attached to the complaint and matters of public record.  *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

### III.   ANALYSIS

### A.   The Lanham Act Claims

The Lanham Act "creates two distinct bases of liability: false association, . . . and false advertising. . . ." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 122 (2014). Although the "two provisions have separate . . . substantive rules and applicability," *Parks, LLC v. Tyson Foods, Inc.*, 186 F. Supp. 3d 405, 414 (E.D. Pa. 2016) (quoting another source), "[e]very circuit court of appeals to address the scope of these provisions has held that they apply only to commercial speech." *Farah v. Esquire Mag.*, 736 F.3d 528, 541 (D.C. Cir. 2013); *see also Keel v. Axelrod*, 148 F. Supp.3d 411, 419 (E.D. Pa. 2015) (collecting cases). Because commercial speech "occupies a subordinate position in the scale of First Amendment values," the Act's focus on commercial speech ensures that it does not conflict with the protections that the First Amendment provides. *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759 n.5 (1985) (quote omitted). Absent this requirement, a plaintiff could use the Act to turn his grievances about editorial content into a commercial Lanham Act claim. *See Reese v. Pook & Pook, LLC.*, 158 F. Supp. 3d 271, 286 (E.D. Pa. 2016).

At its "core," commercial speech is speech that "does no more than propose a commercial transaction." *See Bolger v. Youngs Drug Prod. Corp.*, 463 U.S. 60, 66 (1983) (quote omitted). Guided by the Supreme Court's decision in *Bolger*, the Third Circuit has outlined three-factors that district courts consider in deciding whether speech is commercial: "(1) is the speech an advertisement; (2) does the speech refer to a specific product or service; and (3) does the speaker have an economic motivation for the

speech." *U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia*, 898 F.2d 914, 933 (3d Cir. 1990). Although satisfying all three characteristics provides "strong support for the conclusion that the speech is commercial," the factors are not dispositive, and the inquiry involves "making a commonsense distinction between speech proposing a commercial transaction . . . and other varieties of speech." *Facenda v. N.F.L. Films, Inc.*, 542 F.3d 1007, 1017 (3d Cir. 2008). "[T]he categorization of speech is a question of law that [courts] must resolve through independent review. . . ." *Id.* at 1016.

Of the three factors for the Court to consider, the first and third are "often interrelated" and "speak to the overarching issue of whether this truly is commercial speech as that term has been construed in connection with the Lanham Act." *GOLO, LLC v. HighYa, LLC*, 310 F. Supp. 3d 499, 504 (E.D. Pa. 2018). Generally, courts consider speech that draws the public's attention to a product or service for purposes of promoting its sale an advertisement. *See Facenda*, 542 F.3d at 1017-18. Conversely, speech that makes no refence to defendant's product or service is not commercial speech under the Lanham Act. *See, e.g., Keel*, 148 F. Supp.3d at 421.

A few examples illustrate this disctinction. In *Facenda*, the product at issue was a cable television program. The Third Circuit held that it was commercial speech because it "focused on one product, explaining both how it works and the source of its innovations, all in a positive tone." *Facenda*, 542 F.3d at 1017. In *Keel*, the product at issue was a book about the defendant's political career. The court held that it was not commercial speech because it did "not note the availability of the political consulting services offered by the [defendant] or [his firm]," nor did it provide any other specific

information about that firm's consulting services. *Keel*, 148 F. Supp.3d at 421. The Eleventh Circuit's decision *Tobinick v. Novella* considered a neurologist's criticism in blog posts of another doctor's off-label use of a particular medicine. The Eleventh Circuit held that the blog posts were not commercial speech because they "provide an objective analysis of questionable or controversial medical claims so that consumers can make more informed decisions. . . ." *Tobinick v. Novella*, 848 F. 3d 935, 951 (11th Cir. 2017). They did not "discuss any products for sale by the [Defendant], and, only briefly mention his practice for context." *Id.* at 951.

A plain reading of Mr. Price's article reveals that it does not fall within the "core notion of commercial speech" because it does not propose a commercial transaction. The article discusses the plausibility of Crash Proof's claim of high-yield, risk-free returns compared to other risk-free or low-risk investment options; opines as to the validity of Crash Proof's claim of "no fees attached;" and suggests what Mr. Price believes to be a more secure option for investors. In short, the article's purpose is to provide investment advice and to educate consumers about a product that Mr. Price believes is "too good to be true." Nothing in the article promotes any product or service, so it is not an advertisement. Also, nothing in the article or the complaint suggests that Mr. Price was trying to persuade consumers to use a service that he sells instead of Crash Proof's product, so he did not have an economic motive for the speech. The Court concludes that the article's purpose is not to "propose a commercial transaction."

Crash Proof tries to avoid this conclusion by arguing that Mr. Price published the article for his own economic gain, not "primarily for expressive purposes." (ECF No. 13-1 at 11.) But the Complaint does not identify a single product or service that the article promotes. Nor could it, because the article makes no mention of one. Although Mr. Price describes an alternative investment strategy, he does not try to persuade anyone to use his services, or the services of any particular firm, to implement that strategy. Crash Proof does not even allege that Mr. Price sells competing investment services. In fact, Crash Proof asserts in the Complaint that Mr. Price is retired and has not sold stocks for decades. And, by Crash Proof's own description, the strategy is not novel or proprietary. Instead, it is "an unoriginal . . . stock-based investment strategy." (ECF No. 1 at ¶¶ 17, 34.) But if the strategy is unoriginal, then the article could not even be a veiled attempt to steer customers to a single competitor.

Nonetheless, Crash Proof claims that Mr. Price is its direct competitor because he touts a different type of investment strategy. But all that proves is that Mr. Price and Crash Proof disagree about how people should invest their money. Crash Proof believes in its product. Mr. Price does not. "The mere fact that the parties may compete in the marketplace of ideas is not sufficient to invoke the Lanham Act." *Farah v. Esquire Mag.*, 736 F.3d 528, 541 (D.C. Cir. 2013). The "Lanham Act has never been applied to stifle criticism of the goods or services of another by one, such as a consumer advocate, who is not  engaged in marketing or promoting a competitive product or service." *Reybold Grp. of Cos., Inc. v. Does 1-20*, 323 F.R.D. 205, 210 (D. Del. 2017) (cleaned up).

To the extent that Crash Proof argues that the article is commercial speech because TheStreet paid Mr. Price for the article, the argument is without merit. *See Joseph Burstyn, Inc. v. Wilson*, 343 U.S. 495, 501 (1952) ("That books, newspapers, and magazines are published and sold for profit does not prevent them from being a form of expression whose liberty is safeguarded by the First Amendment."); *Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S. 376, 384 (1973) ("If a newspaper's profit motive were determinative, all aspects of its operations–from the selection of news stories to the choice of editorial position–would be subject to regulation if it could be established that they were conducted with a view toward increased sales. Such a basis for regulation clearly would be incompatible with the First Amendment."); see also *Keel*, 148 F. Supp. 3d at 423 ("I accept that [Defendant] had an economic motivation to sell as many copies of [the book] as possible. But without more, writing a book for profit is not sufficient to render the passage in question commercial speech.").

It is true, of course, that Mr. Price's opinion mentions Crash Proof by name. It therefore satisfies the second factor of the *U.S. Healthcare* test. But just mentioning a product by name does not convert protected speech into commercial speech. Restraurant reviews, art critics, and travel websites, just to name a few, offer sometimes critical analyses of products, by name. But if their speech is arms'-length criticism, it does not constitute commercial speech just because it might impact someone's business or livelihood.

Because Mr. Price's article does not qualify as commercial speech, Crash Proof's Lanham Act claims fail, and the Court need not decide the truthfulness of Mr. Price's article.  The Court will dismiss Crash Proof's Lanham Act claims.

**B.      Remaining State Law Claims**

A court "may decline to exercise supplemental jurisdiction [over state law claims] if … the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). The decision of whether to exercise supplemental jurisdiction where a court has dismissed all federal claims is left to the court's discretion. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). The Third Circuit has directed that district courts "must decline" to exercised supplemental jurisdiction "unless considerations of judicial ecomony, convenience, and fairness to the parties provide an affirmative justification for doing so." *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000).

There is no affirmative justification for the exercise of supplemental jurisdiction here. The case is in its infancy. The Court has developed no partiucarl familiarity with the facts or issues presented. Thus, the Court will decline to exercise supplemental jurisdiction over the remaining state law claims. Moreover, based on the Complaint, there is no diversity of citizenship between Crash Proof and Mr. Price. The Court will therefore dismiss Crash Proof's state law claim. Crash Proof may refile its state law claims in the appropriate state court if it so chooses, or in this Court if it has a basis to invoke the Court's diversity jurisdiction.

## IV.    CONCLUSION

"Humans dislike self-directed criticism. . . . The desire to suppress unpleasant or critical speech is almost irrepressible." *Moore v. City of Kilgore, Tex.*, 877 F.2d 364, 380 (5th Cir. 1989). Yet "[i]f liberty means anything at all, it means the right to tell people what they do not want to hear." Vincent Dowd, *Why George Orwell is Returning to the BBC*, BBC News (Nov. 7, 2017), https://www.bbc.com/news/entertainment-arts-41886208. Mr. Price told Crash Proof what it did not want to hear—that he thinks it's a scam. But as much as Mr. Price's opinion may irritate Crash Proof, it is not illegal under the Lanham Act because it is just that: an opinion. The Court will dismiss Crash Proof's claims. An appropriate Order follows.

**BY THE COURT:**

*/s/ Joshua D. Wolson*
JOSHUA D. WOLSON, J.

April 13, 2021