IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CRASH PROOF RETIREMENT, LLC<br><br>Plaintiff,<br><br>v.<br><br>PAUL M. PRICE,<br><br>Defendant. | Civil Action No. 20-05906-JDW |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION FOR ATTORNEYS' FEES AND COSTS**

On April 13, 2021, this Court dismissed Plaintiff's Lanham Act claims with prejudice. Doc. No. 19 ("Opinion"). Pursuant to Fed. R. Civ. P. 54(d)(2) and 15 U.S.C. § 1117(a), Defendant Paul M. Price ("Defendant" or "Mr. Price") now seeks reasonable attorneys' fees and costs as the "prevailing party."

### I. PRELIMINARY STATEMENT

Plaintiff Crash Proof Retirement LLC ("Plaintiff" or "Crash Proof") brought a baseless lawsuit, with a clear aim of intimidating Defendant Price, a freelancer writer, in retaliation for authoring a First Amendment-protected editorial article published on TheStreet ("the Article"). But the lawsuit's merits – or lack thereof –were apparent from the outset: this Court easily found that the Article's criticism of Crash Proof's business model was clearly protected non-commercial speech. By definition then, Plaintiff's Lanham Act claim failed as a matter of law.

But at every turn, Crash Proof pursued its meritless action in an unreasonable and bad faith manner – establishing that its ultimate goal was intimidation. And Crash Proof's plan nearly worked. After Crash Proof gave Defendant only *one day* to comply with a pre-litigation cease and desist letter, the Article was taken down in order to avoid costly litigation. But that was not enough

for Crash Proof – it demanded $50,000 or else it would sue. When Mr. Price did not pay Crash Proof tens of thousands of dollars, Crash Proof sued him – and then it refused to extend even the most basic professional courtesies when litigating this case.

15 U.S.C. § 1117(a) provides that a court may award fees and costs to the prevailing party in "exceptional" Lanham Act cases. But as the Third Circuit explained, courts are required to "embrac[e] a definition of 'exceptional' far more expansive than" courts had done in the past. *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 314 (3d Cir. 2014). Relying on the Supreme Court's interpretation of identical language in a similar statute, the Third Circuit held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position . . . or the unreasonable manner in which the case was litigated." *Id.* (citing *Octane Fitness v. ICON Health & Fitness*, 134 S. Ct. 1749, 1756 (2014)).

Under this more expansive standard, there should be no doubt that this case is exceptional, both for the utter lack of merit in Crash Proof's litigation position and for the unreasonable manner in which Plaintiff litigated its claims. As this Court noted in its decision dismissing this case, "If free speech means anything, it means that you do not get to sue people because you don't like their opinion of you." Opinion at 1. But that is exactly what Plaintiff Crash Proof did – and the record makes it clear that Crash Proof will do it again unless this Court provides some deterrence. For these reasons, Plaintiff should be ordered to pay Defendant's reasonable fees and costs.

## II. FACTUAL BACKGROUND

### a. Plaintiff Crash Proof's Predecessor and Principal, Phil Cannella, Have a Long History of Threatening First Amendment-Protected Speech.

This is not the first time that Plaintiff Crash Proof's principal, Phil Cannella ("Cannella"), has aimed legal threats against First Amendment-protected speech that questions or criticizes his business practices. For example, in March 2017, *The Philadelphia Inquirer* published an in-depth

2

article about First Senior Financial Group, LLC ("First Senior"), the predecessor to Crash Proof, Compl. ¶ 11, and its principal, Cannella, questioning their annuities-based business model and marketing practices.[1] By the end of that month, Plaintiff announced on its website that it had hired counsel to file a defamation lawsuit against *The Inquirer*.[2]

And when Cannella does sue, it appears he crosses the line in the prosecution of these suits. For example, Cannella and First Senior once brought a lawsuit against a woman named Krista Brennan, "alleging that she 'intentionally posted false, misleading, deceptive and harmful information' about the Defendants on her websites." *Brennan v. Cannella*, No. 14-CV-1560, 2015 WL 2236706, at *1 (E.D. Pa. May 13, 2015). After the parties agreed to dismiss that suit, Ms. Brennan sued Cannella for utilizing unlawful methods to remove her websites that criticized Cannella. *Id.* On summary judgment, the court held that Brennan had produced evidence tending to show that "the defendants [Cannella] engaged in illegal attacks on her two 'Truth about Cannella' websites"; "that the defendants utilized unlawful means in attempts to determine her identity;" and that [Cannella] "conducted cyber-attacks against [plaintiff]." *Id.* at *2-3.

### b. Plaintiff's Successful Pre-Litigation Threats.

TheStreet published Mr. Price's Article on November 2, 2020. On November 3, 2020, Crash Proof, through its counsel, served a cease and desist letter upon Defendant Price at his home via a service processor. *See* Declaration of Paul M. Price ("Price Decl.") at Ex. A; *Id.* at ¶ 5. In this letter, Crash Proof inaccurately described the Article as "obviously un-researched", "false", and

---

[1] Mark Faziollah & Erin Arvedlund, *Fixed Index Annuities: Magical or Unsuitable?,* THE PHILADELPHIA INQUIRER (Mar. 5, 2017), *available at* https://www.inquirer.com/business/inq/fixed-index-annuities-magical-or-unsuitable-20170306.html-2.

[2] Phil Cannella, *Statement on Philadelphia Inquirer*, CRASH PROOF RETIREMENT (Mar. 28, 2017), https://crashproofretirement.com/phil-cannella-philadelphia-inquirer-crash-proof-retirement.

3

violative of the Lanham Act. *See* Price Decl. at Ex. A. In addition to seeking permanent removal of the Article from TheStreet, Crash Proof demanded $50,000 "for its damages and expenses in having to deal with these violations." *See id.* Crash Proof allowed Defendant only *one day* to comply with demands contained in the letter and threatened litigation if its demands were not met in that time. *See id.*

Upon receipt, Defendant Price promptly forwarded Plaintiff's cease and desist to his editor at TheStreet. *See* Price Decl. ¶ 8. While it was under no obligation to do so, to avoid incurring attorney costs, based on Price's request, TheStreet removed the Article from its website. Price Decl. ¶ 8; Declaration of Rachel Strom ("Strom Decl.") ¶ 5. Even with this removal, Plaintiff made clear it would still sue unless Price paid it $50,000 and threatened that the "amount will increase as further milestones are reached." *See* Strom Decl. at Ex. A at 6; *id.* ¶ 7.[3] Notably, $50,000 is more than Mr. Price earns in a whole year from writing articles. Price Decl. ¶ 7.

### c. Crash Proof's Lanham Act Claim Was Entirely Frivolous.

Not satisfied with the removal of the Article, Plaintiff Crash Proof filed suit against Price on November 24, 2020. Doc. No. 1. Crash Proof's Complaint asserted two Lanham Act claims as well as a number of state law claims. *Id.* Mr. Price moved to dismiss the Complaint in its entirety. *See generally*, Def.'s Mot. to Dismiss, Doc. No. 10.

---

[3] While Mr. Liebesman marked this email as "sent pursuant to Fed. R. Evid. 408," this Court may nonetheless consider the email in this context to establish Plaintiff's litigation conduct. Fed. R. Evid 408 only prohibits consideration of settlement offers "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." Thus, as the Third Circuit has already held, Rule 408 does not prevent consideration of settlement discussions on a motion for fees. *Lohman v. Duryea Borough,* 574 F.3d 163, 168 (3d Cir. 2009) ("permitting settlement negotiations to be considered would encourage reasonable and realistic settlement negotiations"); *see also FameFlynet, Inc. v. Jasmine Enters. Inc.,* 2019 WL 3733592, at *2 (N.D. Ill. 2019) (relying on *Lohman* and related precedent and holding that settlement communications may be considered on a motion for fees under the Copyright Act to establish a party's "litigation conduct").

On April 13, 2021, this Court dismissed Plaintiff's Lanham Act claims with prejudice and declined to exercise supplemental jurisdiction over Plaintiff's state law claims. Opinion at 19. Recognizing the importance of protecting First Amendment speech, *id.* at 4, this Court carefully analyzed whether the Article could be deemed commercial speech. In doing so, this Court found that "[a] plain reading" of the Article alone revealed that it was not commercial speech, because it did not propose a commercial transaction. *Id*. at 6. Further, this Court determined that "nothing in the article or the complaint" showed that Defendant had an "economic motive" for the Article. *Id*. This Court also noted that "the Complaint does not identify a single product or service that the article promotes. Nor could it, because the article makes no mention of one." *Id.* at 7.

### d. Plaintiff Repeatedly Engaged in Unreasonable Conduct during the Litigation.

Throughout this litigation, Crash Proof engaged in unreasonable, and at times, bad faith conduct.

***First,*** Plaintiff's conduct during the pre-motion to dismiss meet-and-confer was plainly unreasonable. On January 11, 2021, in accordance with this Court's rules, Defendant's counsel attempted to have a productive pre-motion conference with Plaintiff's counsel. Defendant's counsel presented a clear outline of arguments with a list of supporting authorities as to why Crash Proof's Complaint failed to state any plausible claims. In relevant part, Defendant explained that the Lanham Act claim failed because the Article was not commercial speech and because Plaintiff's allegations did not support the necessary falsity for a Lanham Act claim. *See* Doc. No. 10-2. Plaintiff's counsel refused, arguably in violation of this Court's Individual Practices, to engage with any of Defendant's arguments, offering no substantive responses nor rebutting authorities. *See id.* Nor did he ask a single question about any of Defendant's arguments or authorities. Instead, Plaintiff's counsel shrugged off Defendant's legal arguments by claiming that the motions to dismiss were typically denied in this District. *See id.* On the same day, Defendant's

counsel emailed Plaintiff's counsel the cases she had cited during the meet-and-confer. *Id.* Over a week later, Plaintiff's counsel replied that he was "not persuaded at all", but presented no countervailing arguments or case law. *Id.* This cannot be the type of "substantive verbal communications," this Court must have contemplated in ordering all parties to confer before a motion to dismiss is filed. *See* Rule II.B.4 of this Court's individual practices.

***Second***, before engaging in the required Fed. R. Civ. P. 26(f) conference and the exchange of initial disclosures, Plaintiff propounded premature and invalid requests for production. *See* Strom Decl. ¶ 15. Defendant's counsel informed Plaintiff that the requests were clearly premature under Fed. R. Civ. P. 26, but noted that "we would be happy to find a time to meet and confer as required under the Rules." *See* Strom Decl. at Ex. C. In response, Plaintiff's counsel falsely insinuated that discovery had already started. *See id*. When the parties did have the required Rule 26 conference – at the request of Defendant's counsel – Plaintiff's counsel refused to consider any limitation of discovery while this Court considered the motion to dismiss – requiring Defendant's counsel to seek this Court's intervention. *See* Strom Decl. ¶¶ 16-17.

***Finally***, in the midst of the holiday season, Plaintiff would not even assent to Mr. Price's reasonable request for a 30-day extension to file his response to the Complaint so that Defendant's counsel could have additional time to investigate the factual circumstances alleged in the Complaint and gather relevant evidence to respond. Strom Decl. at Ex. B. Ultimately, this Court granted Defendant's extension request. *See* Doc. No 7.

e. **Defendant Incurred Substantial Attorneys' Fees and Costs in Defending against Plaintiff's Frivolous Lawsuit.**

Because of this frivolous litigation, the publisher of TheStreet, on behalf of Defendant Price, has incurred significant fees and costs. A fair estimate of those fees and costs incurred in

defending the Lanham Act action alone is $50,000.00. *See* Strom Decl. ¶ 18.[4] Although the total costs of defending this litigation far exceed $50,000.00– this amount is a conservative estimate of the fees expended on defending Plaintiff's Lanham Act claim alone. Should this Court grant Defendant's Motion, Defendant will submit a precise accounting of his reasonable attorneys' fees.

### III. ARGUMENT

#### a. Legal Standard

This Court should award Mr. Price the reasonable fees expended in defending Plaintiff's Lanham Act claim – because the claim was unreasonable from the start and Plaintiff's improper litigation tactics should be discouraged. Federal Rule of Civil Procedure 54(d)(2)(A)-(B) provides that a claim for attorneys' fees and related nontaxable expenses be made by motion filed no later than 14 days after the entry of judgment.[5] The motion must specify the judgment and the statute, rule, or other grounds entitling the movant to the award; state the amount sought or provide a fair estimate of it; and disclose, if the court so orders, the terms of any agreement about fees for the services for which the claim is made. *Id.* at 54(d)(2)(B).

Section 1117(a) of the Lanham Act provides that "in exceptional cases," the court may award reasonable attorneys' fees and costs to the party who prevails on a Lanham Act claim. 15 U.S.C. § 1117(a). A defendant "prevails" in litigation when the party "has been awarded some relief by the court." *Buckhannon Bd. and Care Home, Inc. v. West Virginia Dept. of Health and*

---

[4] Defendant will update this number to include additional expenses incurred to prepare this motion and upcoming reply. *See Allegheny Coupling Co. v. Betts Indus., Inc.*, No. CA 06-76, 2012 WL 4478309, at *4 (W.D. Pa. Sept. 27, 2012) (finding that prevailing party was entitled to recover fees and expenses incurred in conjunction with pursuit of fee award under Lanham Act); *In re Fine Paper Antitrust Litig.*, 751 F.2d 562, 595 n. 26 (3d Cir. 1984) ("In litigated statutory fee cases fee petition time is, of course, properly included in the lodestar.").

[5] To the extent this Court finds that this motion is premature because Judgment has not been entered yet, Mr. Price respectfully requests that this Court enter Judgment dismissing the case.

*Human Resources*, 532 U.S. 598, 603 (2001) (citing Black's Law Dictionary 1145 (7th ed. 1999) as defining "prevailing party" as "[a] party in whose favor a judgment is rendered"). There is no doubt that Mr. Price prevailed, as this Court summarily dismissed Plaintiff's Lanham Act claim.

Similarly, there is no doubt that this case is "exceptional" under the standard set forth by the Supreme Court and the Third Circuit. In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, the Supreme Court drastically lowered the showing required to support an award of fees for "exceptional" cases. Interpreting the Patent Act's identical fee language, the *Octane Fitness* Court held that an "'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position" in light of both the governing law and the case's facts or with respect to the "unreasonable manner in which the case was litigated." 572 U.S. at 554. The *Octane Fitness* Court established that district courts can determine whether a case is "exceptional" in a "case-by-case exercise of [the court's] discretion, considering the totality of the circumstances." *Id.* While the court noted that there was no precise formula to determine exceptionality, the Court provided nonexclusive factors for district courts to consider, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 554, n. 6 (quotation omitted).

The Supreme Court clarified that a party's unreasonable conduct need not be sanctionable to justify an award of fees. *Id.* at 555. And while a showing of bad faith is *not* required, "a case presenting either subjective bad faith or exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id*. Additionally, the *Octane Fitness* court rejected the notion that litigants establish their entitlements to fees by "clear and convening evidence," instead providing that entitlement to fees could be established by a "preponderance of

the evidence." *Id.* at 557.

The Third Circuit has since "imported" the *Octane Fitness* standard for "exceptional" into the standard for awarding fees under the Lanham Act. *Fair Wind Sailing,* 764 F.3d at, 315. In doing so, the Third Circuit observed that the *Octane Fitness* Court embraced a definition of "exceptional" that is "far more expansive" than lower courts had been using. *Id.* at 314. The Third Circuit is not alone. *See, e.g. Renna v. County of Union, N.J.*, No. 11-3328 (KM), 2015 WL 93800, at *8–9 (D.N.J. Jan. 7, 2015), *report and recommendation adopted,* No. 2:11-3328 (KM), 2015 WL 1815498 (D.N.J. Apr. 21, 2015) (noting "more flexible" standard); *Domond v. PeopleNetwork APS*, No. 16-24026-CIV-MORENO, 2017 WL 5642463, at *2 (S.D. Fla. Nov. 14, 2017), *aff'd,* 750 F. App'x 844 (11th Cir. 2018) (noting the "far less stringent standard"); *Cross Commerce Media v. Collective, Inc.*, No. 13-cv-2754 (KBF), 2014 WL 7323419, at *3 (S.D.N.Y. Dec. 16, 2014) (noting the new "lower" standard), *partially vacated on other grounds, Cross Com. Media, Inc. v. Collective, Inc.*, 841 F.3d 155, 170 (2d Cir. 2016); *First Mariner Bank v. Resol. L. Grp., P.C.*, MJG-12-1133, 2015 WL 5255275, at *2 n. 1 (D. Md. Sept. 8, 2015) ("Supreme Court lowered the burden for proving that a case was exceptional.").

Thus, now, a district court may deem a case "exceptional," and award fees to the prevailing party under the Lanham Act, when "(a) there is an unusual discrepancy in the merits of the positions taken by the parties or (b) the losing party has litigated the case in an 'unreasonable manner.'" *Fair Wind Sailing, Inc.*, 764 F.3d at 314-15 (quoting *Octane Fitness*, 572 U.S. at 554). This case surely fits within this definition of "exceptional."

### b. Crash Proof's Lanham Act Claims Were Exceptionally Meritless.

First and foremost, from the start, Plaintiff's Lanham Act claim had no chance of success. District courts in the Third Circuit have found cases "exceptional" and granted attorneys' fees

under the Lanham Act where a party's litigating position is "plainly incorrect." *See, e.g., Renna*, 2015 WL 1815498 at *3. "Plainly incorrect" is perhaps the kindest descriptor of Plaintiff's litigation position.

The Article, on its face, is not commercial speech. *See* Doc. No. 19 at 6. As this Court's decision makes clear, Plaintiff should have realized the weakness in its claim before bringing suit: "Nothing in the article promotes any product or service, so it is not an advertisement" and "[t]he Complaint does not identify a single product or service that the article promotes. Nor could it, because the article makes no mention of one." Opinion at 6-7.

Courts around the country, applying *Octane Fitness*, regularly grant attorneys' fees under the Lanham Act when the weakness of a losing party's legal positions should have been apparent to it from the outset – like Plaintiff's position here. *See, e.g., Cross Commerce Media*, 2014 WL 7323419, at *3 ("Included in this Court's determination [that attorneys' fees should be awarded under the Lanham Act] is…the weakness of [Defendant's] legal position- - a weakness that should have been evident before the litigation was threatened, and a weakness that should have prevented the filing of counterclaims"); *Domond*, 2017 WL 5642463, at *2 (awarding attorneys' fees to defendant and deeming case "exceptional" under *Octane Fitness* where "Plaintiffs advanced claims they should have known were meritless"); *Miller v. Hurst*, No. 3:17-CV-00791, 2021 WL 859552, at *6 (M.D. Tenn. Mar. 8, 2021) (awarding attorneys' fees as "plaintiff's claims under the Lanham Act were objectively unfounded at the time they were brought.").

This simply is not a borderline case where each side advanced potentially valid legal arguments dealing in open questions of law; rather, at all times, the Article was obviously not commercial speech under well-established law. To that end, Defendant's Motion to Dismiss pointed out numerous cases in this District establishing that expressive, editorial speech that does

not propose a commercial transaction is not commercial speech under the Lanham Act. *See* Doc. No. 10 at 11-12 (citing *Keel v. Axelrod*, 148 F. Supp. 3d 411, 422 (E.D. Pa. 2015); *GOLO, LLC v. HighYa, LLC*, 310 F. Supp. 3d 499, 505 (E.D. Pa. 2018); *Reese*, 158 F. Supp. 3d at 28). Plaintiff rejected this case law at the parties' pre-motion to dismiss meet-and-confer and in Defendant's Motion, yet it could not point to a single successful Lanham Act case based on editorial speech like the Article. Accordingly, Crash Proof's position was "exceptionally meritless" and an award of fees is appropriate here.

### c. Plaintiff's Litigation Conduct Supports a Fee Award.

In addition to the unusual discrepancy between the merits of the parties' positions, this case is "exceptional", because Plaintiff Crash Proof litigated it in an "unreasonable manner" that flouted the Federal Rules, this Court's Individual Rules, and the norms of professional courtesy.

As stated above, following the Article's publication, Plaintiff sent a cease and desist to Defendant Price that attempted to shake him down for $50,000—more than Mr. Price makes in a year as a freelance writer—and gave him only *one* day to comply. Price Decl. at Ex. A; *see id.* ¶ 7. Although Plaintiff Crash Proof's claims were baseless, TheStreet and Mr. Price agreed as a courtesy—and to avoid the costs and burdens of litigation—to remove the Article. *Id.* ¶ 8; Strom Decl. ¶ 5. Crash Proof was undeterred – seeking tens of thousands of dollars to prevent it from filing this baseless lawsuit. *See* Strom Decl. at Ex. A.

Along with denying a reasonable 30-day extension for Defendant to respond to the Complaint over the holidays, *see* Strom Decl. ¶¶ 10-12; *id.* at Ex. B, Plaintiff refused to engage substantively in the pre-motion to dismiss meet-and-confer, instead brushing aside Defendant's countervailing arguments and law by claiming that motions to dismiss were rarely granted in this District. *See* Doc. No. 10-2. Further, Plaintiff Crash Proof propounded premature discovery

requests prior to a Rule 26 conference or the exchange of initial disclosures. Strom Decl. ¶ 15. When Defendant alerted Plaintiff that such requests were premature, Plaintiff dismissed the Federal Rule requirements, wrongly claiming that "[D]iscovery is not stayed" and then refusing to negotiate any limitation on discovery without this Court's intervention. *See* Strom Decl. at Ex. C. That is to say, Plaintiff and its counsel have been unreasonable from the start.

### d. Defendant's Vindication of Important First Amendment Rights Supports a Fee Award.

At bottom, it is clear that this litigation was nothing more than an attempt by Crash Proof to silence First Amendment-protected criticism under the guise of a meritless Lanham Act claim. For this reason too, this case is "exceptional" under 15 U.S.C. § 1117(a).

Critically, the Supreme Court has held that in deciding whether to award fees, courts should consider a need for deterrence. *Octane Fitness* 572 U.S. at 554, n. 6. That need is precisely why fees are so necessary here.

As this Court succinctly observed in its Opinion, "[i]f liberty means anything at all, it means the right to tell people what they do not want to hear." Doc. No. 19 at 10. But Crash Proof's main principal and predecessor have a history of using the courts and other legal threats to suppress fully First Amendment-protected criticism whenever a journalist or critic "tell[s] Crash Proof what [it] does not want to hear." This practice should be stopped.

Outside of the Lanham Act context, where lawsuits, such as this one, have the intent or effect of chilling First Amendment-protected speech, courts have found that attorneys' fees are justified as deterrence. *See, e.g., Schwab v. Hansen*, No. 2:17cv394, 2018 WL 2386059, at *8 (E.D. Va. May 25, 2018) (holding that award of attorneys' fees was "justified by the need to deter a potential chilling effect on the exercise of First Amendment right"); *DeBauche v. Trani*, 191 F.3d 499, 511 (4th Cir. 1999) (finding attorneys' fees award appropriate where lawsuit "might chill

broadcasters' and journalists' exercise of their First Amendment rights"). Similarly here, this Court should exercise its discretion to award Defendant his fees, both to encourage creators of expressive works to defend themselves against spurious Lanham Act claims and, as importantly, to deter Plaintiff and others like it, from using litigation to stifle First Amendment-protected speech simply because they do not like what was said.

IV. **CONCLUSION**

For the foregoing reasons, Defendant respectfully requests that this Court grant his Motion for Attorneys' Fees and Costs. Should the Court grant this motion, Defendant will provide this Court with detailed fee records to support its request for $50,000.00 in fees and costs as well as any additional costs Defendant incurred in preparing this Motion.

Respectfully submitted,

Dated: May 18, 2021  By:   /s/ Rachel F. Strom
Rachel Strom (admitted *pro hac vice*)
Nimra H. Azmi (admitted *pro hac vice*)
**DAVIS WRIGHT TREMAINE LLP**
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone: (212) 402-4069
Fax: (212) 489-8340
Email: rachelstrom@dwt.com
         nimraazmi@dwt.com

Andrew K. Garden (No. 314708)
**CONRAD O'BRIEN PC**
Centre Square West Tower
1500 Market Street, Suite 3900
Philadelphia, PA 19102-2100
Telephone: (215) 864-9600
Fax: (215) 864-0064
Email: agarden@conradobrien.com

*Attorneys for Defendant Paul M. Price*

# CERTIFICATE OF SERVICE

I, Rachel F. Strom, hereby certify that on the date set forth below I caused a true and correct copy of the foregoing motion and memorandum of law to be served upon the following attorneys of record via ECF:

    Sidney S. Liebesman (PA ID# 75945)
    Courtney Emerson (PA ID# 320072)

Respectfully submitted,

Dated: May 18, 2021    **By:**

/s/ Rachel F. Strom
Rachel F. Strom (admitted *pro hac vice*)
**DAVIS WRIGHT TREMAINE LLP**
1251 Avenue of the Americas, 21st Floor
New York, NY 10020
Telephone: (212) 402-4069
Fax: (212) 489-8340
Email: rachelstrom@dwt.com

*Attorney for Defendant Paul M. Price*